# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIAMING WANG,<br><br>        Plaintiff,<br><br>  v.<br><br><br><br>MSG NETWORKS INC., JAMES L. DOLAN, CHARLES F. DOLAN, AIDAN J. DOLAN, KRISTIN A. DOLAN, PAUL J. DOLAN, THOMAS C. DOLAN, WILLIAM J. BELL, JOSEPH M. COHEN, JOSEPH J. LHOTA, JOEL M. LITVIN, STEPHEN MILLS, HANK J. RATNER, BRIAN G. SWEENEY, and JOHN L. SYKES,<br><br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jiaming Wang ("Plaintiff") by and through Plaintiff's undersigned attorneys, brings this action on behalf of Plaintiff, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by MSG Networks Inc. ("MSG Networks" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's

public statements; and (d) review of other publicly available information concerning MSG Networks and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against MSG Networks and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Madison Square Garden Entertainment Corporation ("MSG Entertainment") (the "Proposed Transaction").

2.      On March 21, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with MSG Entertainment.  Pursuant to the terms of the Merger Agreement the Company's shareholders will receive 0.172 of a share of MSG Entertainment stock (the "Merger Consideration").

3.      On May 7, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against MSG Networks and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MSG Networks shareholders before the vote on the Proposed Transaction or, in the event the

Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of MSG Networks shares.

9. Defendant MSG Networks is incorporated under the laws of Delaware and has its principal executive offices located at 11 Pennsylvania Plaza, New York, New York 10001.  The Company's common stock trades on the New York Stock Exchange under the symbol "MSGN."

10. Defendant James L. Dolan ("James Dolan") is and has been a director and the Executive Chairman of the Board of Directors of MSG Networks at all times during the relevant

time period. He is also Executive Chairman and Chief Executive Officer ("CEO") of MSG Entertainment.

11.     Defendant Aiden J. Dolan ("Aiden Dolan") is and has been a director of MSG Networks at all times during the relevant time period.

12.     Defendant Kristin A. Dolan ("Kristin Dolan") is and has been a director of MSG Networks at all times during the relevant time period.

13.     Defendant Paul J. Dolan ("Paul Dolan") is and has been a director of MSG Networks at all times during the relevant time period.

14.     Defendant Thomas C. Dolan ("Thomas Dolan") is and has been a director of MSG Networks at all times during the relevant time period.

15.     Defendant William J. Bell ("Bell") is and has been a director of MSG Networks at all times during the relevant time period.

16.     Defendant Joseph M. Cohen ("Cohen") is and has been a director of MSG Networks at all times during the relevant time period.

17.     Defendant Joseph J. Lhota ("Lhota") is and has been a director of MSG Networks at all times during the relevant time period.

18.     Defendant Joel M. Litvin ("Litvin") is and has been a director of MSG Networks at all times during the relevant time period.

19.     Defendant Stephen Mills ("Mills") is and has been a director of MSG Networks at all times during the relevant time period.

20.     Defendant Hank Ratner ("Ratner") is and has been a director of MSG Networks at all times during the relevant time period.

21.     Defendant Brian G. Sweeney ("Sweeney") is and has been a director of MSG Networks at all times during the relevant time period.

22.     Defendant John L. Sykes ("Sykes") is and has been a director of MSG Networks at all times during the relevant time period.

23.     Defendants James Dolan, Aidan Dolan, Kristin Dolan, Paul Dolan, Thomas Dolan, Bell, Cohen, Lhota, Litvin, Mills, Ratner, Sweeney, and Sykes are collectively referred to herein as the "Individual Defendants."

24.     The Individual Defendants, along with Defendant MSG Networks, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.     MSG Networks is a pioneer in sports media, owns and operates two award-winning regional sports and entertainment networks and a companion streaming service that serve the nation's number one media market, the New York DMA, as well as other portions of New York, New Jersey, Connecticut and Pennsylvania. The networks feature a wide range of compelling sports content, including exclusive live local games and other programming of the New York Knicks, New York Rangers, New York Islanders, New Jersey Devils and Buffalo Sabres, as well as significant coverage of the New York Giants and Buffalo Bills. The Company was formerly known as The Madison Square Garden Company and changed its name to MSG Networks Inc. in October 2015. MSG Networks was founded in 1969 and is based in New York New York.

### The Company Announces the Proposed Transaction

26.     On March 26, 2021, the Company jointly issued a press release announcing the

Proposed Transaction.  The press release stated in part:

> NEW YORK--(BUSINESS WIRE)--Madison Square Garden Entertainment
> Corp. ("MSG Entertainment") (NYSE: MSGE) and MSG Networks Inc. ("MSG
> Networks") (NYSE: MSGN) today announced they have reached a definitive
> agreement for MSG Entertainment to acquire MSG Networks in an all-stock,
> fixed exchange ratio transaction.
>
> The merger is expected to be tax-free for both MSG Entertainment and MSG
> Networks and their stockholders. Upon the closing of the transaction, MSG
> Networks stockholders would receive 0.172 shares of MSG Entertainment Class
> A or Class B common stock for each share of MSG Networks Class A or Class B
> common stock they own. The exchange ratio is approximately 4% above the ratio
> of the unaffected closing stock prices of the two companies on March 10, 2021,
> the last trading day before a press report speculated on a potential transaction.
>
> This transaction would create a leading entertainment and media company with a
> more diversified revenue base that would be well positioned to deliver innovative
> experiences across all of its assets. The combined company would have a stronger
> liquidity position to support its live entertainment business, which following the
> shutdown of its venues due to the pandemic, is now on a path back to normal
> operations. In addition, the new company would have enhanced financial
> flexibility to fund current growth initiatives, including its planned state-of-the-art
> venue in Las Vegas, MSG Sphere at The Venetian, as well as future opportunities
> across both entertainment and media.
>
> With the acquisition of MSG Networks, MSG Entertainment anticipates it would
> capture more of the emerging revenue opportunity related to the potential
> expansion of legalized sports gaming in its market. The combination of the
> companies' media, digital and venue assets creates a powerful platform for
> potential sports gaming partners, which is expected to generate significant
> incremental revenue in the years ahead.
>
> MSG Entertainment President Andrew Lustgarten said: "MSG Entertainment is
> actively executing a plan designed to grow the Company beyond its established
> collection of assets into one that is pioneering the next generation of
> entertainment. We have always believed in the value of live sports and look
> forward to welcoming MSG Networks back into the fold as part of a transaction
> that we are confident would enhance our financial flexibility and set the stage for
> continued growth and value creation."

MSG Networks President and CEO Andrea Greenberg said: "We anticipate significant benefits from rejoining MSG Entertainment, including creating a combined company with greater diversification and resources. This would, in turn, help drive new innovative opportunities across both the entertainment and media businesses, ultimately creating significant value for our collective shareholders."

In addition to forming a diversified company with enhanced financial flexibility, it is anticipated that the combined company would realize meaningful tax efficiencies. As of December 31, 2020, MSG Entertainment had a federal net operating loss (NOL) of approximately $250 million, primarily due to the temporary shutdown of its venues as a result of COVID-19. Furthermore, MSG Entertainment expects to accelerate the depreciation of significant components of the capital investment for MSG Sphere in Las Vegas in calendar 2023, which is when the venue is expected to open. As a result of this transaction, the combined company would be able to more efficiently utilize MSG Entertainment's existing NOL, as well as future bonus depreciation related to MSG Sphere in Las Vegas, to offset the taxable income of all of its businesses, including MSG Networks, which today is a full state and federal income tax cash payer.

MSG Networks is a leader in sports content development and distribution that generates significant revenue, adjusted operating income, and free cash flow.[1] For fiscal year 2020, MSG Networks generated revenue of $685.8 million, operating income of $295.0 million, adjusted operating income of $321.4 million, net cash provided by operating activities of $210.0 million, and free cash flow of $207.2 million. The media company's two networks, MSG Network and MSG+, operate in the nation's number one media market, the New York DMA, as well as other portions of New York, New Jersey, Connecticut and Pennsylvania. The networks deliver exclusive live local games of the New York Knicks, New York Rangers, New York Islanders, New Jersey Devils and Buffalo Sabres, as well as significant coverage of the New York Giants and Buffalo Bills.

While MSG Networks continues to operate in an evolving media landscape, the Company reported for its fiscal 2021 second quarter a sequential improvement in its year-over-year rate of subscriber decline, which has continued to improve so far during the fiscal 2021 third quarter.[2] And with the 2020-21 NBA and NHL seasons, MSG Networks is currently enjoying significant year-over-year increases in viewership for both its linear networks and MSG GO streaming app, which helps drive the Company's advertising revenue.

MSG Entertainment's portfolio features iconic venues, including Madison Square Garden; production assets such as the Radio City Rockettes and the Christmas Spectacular and a majority interest in Tao Group Hospitality.

MSG Entertainment is actively pursuing its vision for MSG Sphere – new, state-of-the-art venues that will reinvent the entertainment experience. Construction is

well underway on MSG Sphere in Las Vegas, and the Company continues to pursue its plans for an additional MSG Sphere in London, pending necessary approvals.

The definitive agreement was exclusively negotiated and unanimously approved by Special Committees of MSG Entertainment's and MSG Networks' boards, both of which are comprised entirely of independent directors. The agreement was also unanimously approved by the Boards of Directors of both MSG Entertainment and MSG Networks.

The transaction is subject to approval by a majority of the combined voting power of the outstanding shares of MSG Networks Class A common stock and Class B common stock. MSG Entertainment's issuance of its common stock in the transaction is subject to approval by a majority of the combined voting power of the votes cast by the holders of shares of MSG Entertainment Class A common stock and Class B common stock and, separately, the issuance of MSG Entertainment Class B shares must be approved by the holders of not less than 66 2/3% of the voting power of the outstanding shares of MSG Entertainment Class B common stock. The Special Committee of the Board of Directors of MSG Networks, and the full board, based on the recommendation of the MSG Networks Special Committee, have each recommended that MSG Networks stockholders adopt the merger agreement. The Special Committee of the Board of Directors of MSG Entertainment, and the full Board, based on the recommendation of the MSG Entertainment Special Committee, have each recommended that MSG Entertainment stockholders approve the issuance of MSG Entertainment common stock required for the transaction.

The holders of all of the outstanding shares of MSG Networks Class B common stock and MSG Entertainment Class B common stock, who have sufficient votes to approve the transaction, have entered into voting agreements pursuant to which they have agreed to vote all of the MSG Networks Class B common stock and MSG Entertainment Class B common stock in favor of the adoption of the merger agreement and the issuance of MSG Entertainment common stock required for the transaction, respectively.

The transaction, which is also subject to customary closing conditions, is expected to be completed during the third quarter of calendar 2021. Upon the closing of the transaction, a current director of MSG Networks elected by the holders of its Class A common stock would be appointed as a director of MSG Entertainment.

Moelis & Company LLC and The Raine Group are serving as independent financial advisors and Wachtell, Lipton, Rosen & Katz is serving as independent legal counsel to the Special Committee of the Board of Directors of MSG Entertainment. LionTree Advisors LLC and Morgan Stanley & Co. LLC are serving as independent financial advisors and Davis Polk & Wardwell LLP is serving as independent legal counsel to the Special Committee of the Board of

Directors of MSG Networks. Debevoise & Plimpton LLP is serving as legal counsel to the Dolan family.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

27. On May 7, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

28. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

29. The Registration Statement contains projections prepared by the Company's and MSG Entertainment's management concerning the Proposed Transaction, but fails to provide material information concerning such.

30. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

31.     In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

32.     Specifically, with respect to each of the projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted Operating; (ii) Free Cash Flow for MSG Entertainment and (iii) Free Cash Flow from Operations for MSG Networks.

33.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Opinions**

34.     The Registration Statement contains the financial analyses and opinion of LionTree Advisors LLC ("LionTree") and Morgan Stanley & Co. LLC ("Morgan Stanley" and

---

http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

together with LionTree, the "Financial Advisors") concerning the Proposed Transaction, but fails to provide material information concerning such.

35.     With respect to the Financial Advisors' *Selected Publicly Traded Companies Analysis* for the Company, the Registration Statement fails to disclose the individual multiples and metrics for the each of the companies observed in the analysis.

36.     With respect to the Financial Advisors' *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the line items used by the Financial Advisors to calculate the Company's Unlevered Cash Flow for Fiscal years 2022 through 2025; (ii) the terminal values of MSG Networks; and (iii) the inputs and assumptions underlying the Financial Advisors use of the discount rates ranging from 6.0% to 7.0%.

37.     With respect to the Financial Advisors' *Selected Publicly Traded Companies Analysis* for MSG Entertainment, the Registration Statement fails to disclose the individual multiples and metrics for the each of the companies observed in the analysis.

38.     With respect to the Financial Advisors *Discounted Cash Flow Analysis* for MSG Entertainment, the Registration Statement fails to disclose: (i) the line items used by the Financial Advisors to calculate MSG Entertainment's Unlevered Cash Flow for the fiscal years 2022 through 2025; (ii) the terminal values of MSG Entertainment; (iii) the inputs and assumptions underlying the Financial Advisors use of the discount rates ranging from 7.25% to 8.25% used by LionTree and 7.29% to 8.49% used by Morgan Stanley, as well as the reason for the different discount rates ranges; (iv) the basis for the Financial Advisors application of a multiple of 13.5x to Tao Group Hospitality's calendar year 2022 estimated AOL; (v) the basis for the Financial Advisors application of a discount rate of 8.6% cost of equity to net operating

tax losses; and (vi) the basis for the Financial Advisors application of a multiple of 18.0x to BCE's calendar year 2022 estimated AOL to calculate BCE minority interest.

39.     With respect to Financial Advisors' *Price Targets Analysis*, the Registration Statement fails to disclose the specific price targets observed as well as the sources thereof.

40.     Lastly, the Registration Statement fails to disclose the amount of compensation received by Morgan Stanley from the Company and AMC Networks Inc. (an affiliate of MSG Entertainment and the Company) for financing services and the amount of compensation received by Morgan Stanley for financial advisory services to the Special Committee in connection with prior discussions involving a strategic transaction with MSG Entertainment.

41.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

42.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

44.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or

omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

48.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

51.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations

and omissions are not corrected prior to the vote on the Proposed Transaction.

52.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of MSG Networks within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MSG Networks, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

58.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 21, 2021                                    Respectfully submitted,

                                                       By: */s/ Joshua M. Lifshitz*
                                                       Joshua M. Lifshitz
                                                       Email: jml@jlclasslaw.com
                                                       **LIFSHITZ LAW FIRM, P.C.**
                                                       1190 Broadway,
                                                       Hewlett, New York 11557
                                                       Telephone: (516) 493-9780
                                                       Facsimile: (516) 280-7376

                                                       *Attorneys for Plaintiff*